IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYRONE BLOCKER,

        Petitioner,

v.

ROB PERSSON,

        Respondent.

Case No. 6:11-cv-01096-SI

OPINION AND ORDER

Corinne J. Lai
No. 2 Westlake Executive Suites
14523 Westlake Drive
Lake Oswego, OR 97035

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Felon in Possession of a Weapon, Delivery of Marijuana, and Criminal Forfeiture. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

On February 28, 2008, the Salem Police Department was contacted regarding a domestic disturbance involving petitioner and his girlfriend, Shalimar Reese. Petitioner had been living with Reese in her apartment for approximately two months, and when police interviewed Reese at her parents' home, she gave them permission to search the apartment.

Police officers traveled to Reese's apartment to contact petitioner and, after waiting for between 20 and 25 minutes for him to answer the door, they asked for his consent to check the apartment to ensure no one else was inside. Petitioner responded, "Well, I don't live here, so I can't give you consent to enter." Respondent's Exhibit 103, p. 26. When Officer Gould asked petitioner whether any portion of the residence was his, petitioner told him that he had items in the downstairs closet, but nothing upstairs belonged to him. As a result, Officer Gould searched the upstairs of the apartment and avoided the downstairs closet. *Id* at 28.

2 - OPINION AND ORDER

Once upstairs, Officer Gould found a men's shoe box under the bed which contained baggies, a digital scale, and marijuana residue. He also discovered a small locked safe in the closet with a key broken off in its lock. When he contacted Reese about the safe, she claimed it was petitioner's property. Petitioner told another officer that the safe did not belong to him. *Id* at 52.

At that point, Officer Gould advised petitioner of his *Miranda* rights and asked petitioner about the safe and the items upstairs. Petitioner responded, "If I'm going to be asked these questions . . . I want to talk to a lawyer." *Id* at 32. Because petitioner had denied owning the safe, the police called a locksmith to open it. Once the locksmith opened the safe, police found a firearm, marijuana packaging material, prescription medications, and evidence indicating that the safe belonged to petitioner.

Despite petitioner having invoked his right to counsel, the police again approached him and asked if he was willing to turn over his keys and wallet. Petitioner consented and, in response to further police questioning, admitted that the wallet and its contents belonged to him. When the police searched petitioner's wallet, they found $4,000.00 in cash in a Wells Fargo envelope with a receipt showing he had withdrawn the money shortly before the police arrived at the apartment. Police then discovered that one of petitioner's keys fit the lock to the safe, prompting petitioner

3 - OPINION AND ORDER

to assert that Reese had given it to him along with a key to the apartment. *Id* at 36.

Petitioner filed a pretrial motion to suppress in which he argued that the contents of the safe should not be introduced at trial because Reese did not own the safe and could not consent to its search, and he, as the owner, did not give his consent to search the safe. He also argued that *Miranda* prohibited the police from asking him any questions after he invoked his right to counsel, thus any incriminating evidence that resulted should be excluded.

The State contended that simply handing over his wallet and keys did not amount to verbal statements by petitioner that were subject to *Miranda* protections. It did, however, make the following concession:

> The State concedes that there were some conversations here that frankly, again, were all self-serving. I would think if nothing else, the Defendant might want me to admit them. But I can see that there were statements made post-Miranda after he had essentially asserted his right to a lawyer, but those statements are completely confined to, "That is not my safe. I only have keys because Shalimar gave them to me to fit a mailbox" -- I'm paraphrasing, but those are the statements. Again, completely self-serving. Those are the statements that we would be talking about post-Miranda. And the State concedes that he essentially asserted his right to a lawyer at that point. I could not offer those. Again, self-serving statements; not really sure why the Defendant

4 - OPINION AND ORDER

>wouldn't want them in, but that's his call from a trial strategy standpoint.

Id at 93.

The trial court made the following ruling:

>Defendant asserts that he was "pressured" into making statements and providing items to the police (such as his wallet and keys) after he had received his Miranda warnings and after he had invoked his right to remain silent and speak to an attorney. The state concedes that the defendant did make a few statements after he "invoked" but these statements were either self-serving or exculpatory. The state further argues that the voluntary "handing over" to the police of his wallet and keys does not constitute a "statement" which might be in violation [of] Miranda. I agree with the state. The defendant's actions (as opposed to statements) which he may have made after he invoked are not protected by Miranda.

Respondent's Exhibit 114.

When the case proceeded to trial, the State did not seek to put petitioner's post-Miranda statements into evidence. But when defense counsel cross-examined Officer Vanmeter and asked him whether he had taken petitioner's wallet or whether petitioner had voluntarily relinquished it, Vanmeter responded:

>He was handcuffed and I asked him if I could – as I was patting down the jacket, I asked – I felt something in his coat and said, "What is it" and he said it's his wallet. And I said, "Can I look at it?" He said, "Yeah, go ahead."

Trial Transcript, p. 280.

Defense counsel also asked Officer Vanmeter whether he had taken anything out of the wallet, and Officer Vanmeter replied,

5 - OPINION AND ORDER

"Yes. I asked him if I could – as I looked inside, I asked if I could look inside the case envelope, and he said, 'Yeah, I don't care.' And at that point I saw several $100 and $50 bills." *Id* at 281. In this way, these post-*Miranda* statements pertaining to petitioner's ownership of the wallet and its contents were elicited at trial.

At the conclusion of his trial, the jury convicted petitioner of Felon in Possession of a Firearm, two counts of Delivery of Marijuana, and criminal forfeiture. As a result, the trial court sentenced him to 58 months in prison. Respondent's Exhibit 101.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied review. *State v. Blocker*, 240 Or. App. 464, 248 P.3d 451, *rev. denied*, 350 Or. 423, 256 P.3d 1097 (2011). Petitioner filed a second direct appeal which the Oregon Court of Appeals dismissed on the State's motion. Respondent's Exhibits 111-113. Petitioner did not seek further direct review, nor did he file for post-conviction relief.

Petitioner filed this 28 U.S.C. § 2254 habeas corpus action on September 9, 2011. After withdrawing Ground One, petitioner argues a single claim: whether his convictions were obtained in violation of the privilege against self-incrimination. Respondent asks the court to deny relief on the Petition because petitioner's *Miranda*

6 - OPINION AND ORDER

claim was properly denied in a state court decision that is entitled to deference.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). Because the state courts in petitioner's case did not specifically address the post-*Miranda* statements petitioner places at issue in this case, the court conducts an independent review of the record.

## II. **Analysis**

Petitioner alleges that Officer Vanmeter improperly testified to the statements petitioner made following the invocation of his right to counsel. He specifically argues that the questions regarding ownership of the wallet and the cash within it yielded incriminating information in violation of *Miranda*.

8 - OPINION AND ORDER

Once petitioner asked for counsel, the officers in this case were obligated to cease their questioning. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). The prosecuting attorney recognized that the statements the officers subsequently elicited from petitioner were constitutionally problematic, and agreed that she would not bring them out during the trial. However, as discussed in the Background of this Opinion, petitioner's statements regarding ownership of the wallet and its contents were nevertheless introduced at trial during defense counsel's cross-examination of Officer Vanmeter.

The court is unaware of any clearly established federal law finding a *Miranda* violation where a petitioner's own attorney is responsible for introducing the statements which *Miranda* would preclude the State from using. Indeed, the Supreme Court has indicated that in order for a *Miranda* violation to occur, the protected statements must be introduced during the State's case in chief. *United States v. Patane*, 542 U.S. 630, 640-41 (2004) (plurality opinion). Although petitioner believes that Officer Vanmeter could have kept his answers shorter, the style in which Vanmeter answered questions during defense-counsel's cross-examination is not unusual, and it does not arise to the level of a constitutional violation. Accordingly, upon an independent review of the record, the state-court decision denying relief is

9 - OPINION AND ORDER

neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 28th day of August, 2013.

_____
Michael H. Simon
United States District Judge

10 - OPINION AND ORDER